**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2008

(Argued:  April 8, 2009                    Decided:  September 21, 2009)

Docket No. 06-4246-pr

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

José Hernández,

   *Plaintiff-Appellant*,

v.

Kevin R. Coffey, C.O., Lawrence J. Featherston, P.O., James Chamberlain, Sgt., M. Taylor, Nurse,[*]

   *Defendant-Appellees*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Before: JACOBS, *Chief Judge*, WALKER, and LEVAL, *Circuit Judges*.

   Appeal from a grant of summary judgment by the United States District Court for the Southern District of New York (Pauley, *J.*) for the prisoner-plaintiff's failure to exhaust

---

[*]The Clerk of the Court is instructed to amend the official caption in this case to conform to the listing of the parties above.

administrative remedies before initiating suit under 42 U.S.C. § 1983 alleging that he was beaten by defendant corrections officers and denied medical treatment by defendant nurse. The Court of Appeals (Leval, *J.*) vacates the district court's order and remands because the district court failed to provide adequate notice to *pro se* plaintiff of the procedural requirements and potential consequences of summary judgment, and failed to provide him adequate opportunity to seek discovery of and to submit evidence related to exhaustion.

<div style="margin-left:50%">

LINDA EPSTEIN (Vilia B. Hayes, *on the brief*), Hughes Hubbard & Reed LLP, New York, New York, for *Plaintiff-Appellant*.

RICHARD O. JACKSON, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, and Benjamin N. Gutman, Deputy Solicitor General, *on the brief*), for Andrew M. Cuomo, Attorney General of the State of New York, New York, New York, for *Defendants-Appellees*.

</div>

LEVAL, *Circuit Judge*:

José Hernández, an inmate at Clinton Correctional Facility, appeals from the grant of summary judgment by the United States District Court for the Southern District of New York (Pauley, *J.*), dismissing Hernández's suit under 42 U.S.C. § 1983, which alleged that he was beaten by defendant corrections officers and denied medical treatment by defendant nurse. Hernández, who is represented by counsel on this appeal, presented his case *pro se* (without an attorney acting on his behalf) in the district court. The court granted summary judgment on the ground that Hernández had not exhausted administrative remedies as required by 42 U.S.C. § 1997e(a), because he did not prosecute a grievance through all three stages of the Inmate Grievance Procedure ("IGP") provided by the New York State Department of Correctional

Services ("DOCS"). Hernández claims that the IGP was not available to him because, when he filed a grievance at the first stage of the IGP, he received no response and his grievance was not assigned a grievance number. He also argues that, if he did fail to exhaust his administrative remedies, the failure was justified because he reasonably believed at the time that exhaustion was not required. Finally, Hernández argues that, because he was acting *pro se* at the time, the district court committed error in converting the defendants' motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) to a motion for summary judgment and dismissing his case without first explaining the procedural requirements for responding to such a motion and the potential consequences of the motion, and without providing him an opportunity to take discovery and to submit evidence to respond to the motion. We agree with the last contention. We therefore vacate the dismissal of the suit and remand for further proceedings.

## BACKGROUND

In his complaint, Hernandez alleged that he was attacked and seriously injured by the defendant corrections officers on November 5, 1998 during a transfer after his court appearance at Kings County Family Court. His complaint further alleged that, following the attack, he was denied medical care by Defendant Taylor, a nurse in the Downstate Correctional Facility medical center.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner

confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is "mandatory" and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes." *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002). Section 1997e(a) requires "proper exhaustion," which "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (internal quotation marks omitted) (emphasis in original).

The grievance procedure provided by DOCS consists of three stages. First, a grievance is filed with the Inmate Grievance Resolution Committee ("IGRC"). Next, if the decision by the IGRC is adverse to the inmate, the inmate may appeal the decision to the prison superintendent. Finally, the inmate may appeal the superintendent's decision to the Central Office Review Committee ("CORC"). *Brownell v. Krom*, 446 F.3d 305, 309 (2d Cir. 2006). The IGP sets time limits for each action in the grievance process. According to the rules in effect in 1998, when the conduct at issue occurred, the inmate's grievance must have been filed with the IGRC within fourteen days of the incident. The IGRC clerk would then number and log each grievance at the time of receipt. If the IGRC failed to reach an informal resolution with the complainant, the IGRC was then required to hold a hearing within seven days after receipt of the grievance and would render a decision within two working days of the hearing. Upon receiving the IGRC's written response, the inmate had four days to appeal to the superintendent. Upon receiving the

superintendent's written response, the inmate had four days to appeal to the CORC. Matters not decided within the time limits could be appealed to the next step.

On November 29, 1999, Hernández filed the instant suit. His complaint asserted that he utilized the state prisoner grievance procedure by writing to the Commissioner of DOCS, the New York State Police, and the Dutchess County District Attorney. The district court held a conference to discuss whether Hernández had exhausted administrative remedies and, after the conference, ordered Hernández to "submit a sworn affidavit explaining the administrative remedies that he sought and attaching all letters submitted in connection with those requests." Hernández responded by affidavit, dated May 10, 2002, that he wrote letters on November 6, 1998 to the Commissioner of DOCS and the New York State Police, on November 16, 1998 to the Dutchess County District Attorney, and at some point to Chief Judge Griesa of the United States District Court for the Southern District of New York. He also argued in the affidavit that his letter to the Commissioner sufficed to exhaust administrative remedies. He argued further that the PLRA's exhaustion requirement did not apply to his case because the Supreme Court's 2002 decision in *Porter*, 534 U.S. 516, that exhaustion was required for suits involving isolated episodes as well as those involving general conditions, should not apply retroactively.

On June 28, 2002, the defendants filed a motion for judgment on the pleadings pursuant to Rule 12(c) arguing that Hernández failed to exhaust administrative remedies because he failed to file grievances through the IGP. In an affidavit dated July 29, 2002, Hernández stated that he

5

did file a grievance on November 10, 1998, but never received a response or a grievance number. He attached to the affidavit a handwritten "Inmate Grievance Complaint" dated November 6, 1998. The affidavit also stated that he wrote to the Clinton Correctional Facility inmate grievance office on February 15, 2000 requesting a response to his grievance, but never received one. Hernández explained that he failed to mention the grievance in his complaint because he never received a response to his grievance and because, at the time he filed suit, "it was held that exhaustion of administrative remedies was not required for prisoners['] claims of assault or excessive force." Finally, Hernández claimed to have "original copies" of additional grievance materials but stated that he could not submit them to the court because he could not "pay for copies."

In an order dated September 29, 2003, the district court granted the defendants' motion for judgment on the pleadings, concluding that the *Porter* rule applied retroactively to Hernández's claims and that the materials submitted by Hernández did not serve to exhaust his administrative remedies. *Hernández v. Coffey*, No. 99 Civ. 11615 (WHP), 2003 WL 22241431, at *2-3 (S.D.N.Y. Sept. 29, 2003). The district court did not decide whether the grievance submitted with Hernández's second affidavit was legitimate because, the court determined, even if Hernández had filed a grievance, he had not exhausted his appeals as required by the IGP. *Id.* at *4.

On Hernández's appeal, we vacated the district court's order and remanded for

consideration of three issues identified by our decisions in *Giano v. Goord*, 380 F.3d 670 (2d Cir. 2004), and *Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004): (1) the extent to which administrative remedies were in fact available to the plaintiff; (2) whether the defendants should be estopped from asserting a failure to exhaust; and (3) whether the plaintiff was justified in failing to exhaust his administrative remedies. *Hernández v. Coffey*, No. 03-0303-pr (2d Cir. Jan. 20, 2005).

On remand, the district court considered only the parties' original 2002 submissions and did not permit any additional discovery, briefing, or evidentiary submissions. In an order dated July 26, 2006, the court converted the defendants' motion for judgment on the pleadings to a motion for summary judgment and granted it. *Hernández v. Coffey*, No. 99 Civ. 11615 (WHP), 2006 WL 2109465, at *2, *4 (S.D.N.Y. July 26, 2006). The court determined that the lack of departmental response to Hernández's grievance did not excuse his failure to appeal as required by the IGP, so that administrative remedies were in fact available to him. *Id.* at *3. The court further found that Hernández identified no conduct by the defendants that prevented him from pursuing his IGP appeals. *Id.* at *4. Finally, the court concluded that the plaintiff's belief that exhaustion was not required did not justify his failure to exhaust because the rule in *Porter* "applies retroactively to prisoners such as Hernandez who filed their suits prior to the Supreme Court's pronouncement." *Id.* (internal quotation marks omitted).

Hernández again appealed, and on April 25, 2008, we issued an order for the appointment

of counsel. *Hernandez v. Coffey*, No. 06-4246-pr (2d Cir. Apr. 25, 2008). On October 2, 2008, Hernández moved to supplement the record with four documents: a grievance he submitted to the Superintendent of the Clinton Correctional Facility dated November 18, 1998; two letters to the Superintendent dated November 17 and 28, 1998; and a letter to the Director of the IGP dated May 22, 1999.[1]

## DISCUSSION

Rule 12(d) of the Federal Rules of Civil Procedure provides, "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Accordingly, a district court acts properly in converting a motion for judgment on the pleadings into a motion for summary judgment when the motion presents matters outside the pleadings, but the rule requires that the court give "sufficient notice to an opposing party and an opportunity for that party to respond." *Groden v. Random House, Inc.*, 61 F.3d 1045, 1052 (2d Cir. 1995).

Ordinarily, formal notice is not required where a party "should reasonably have recognized the possibility that the motion might be converted into one for summary judgment [and] was [neither] taken by surprise [nor] deprived of a reasonable opportunity to meet facts

---

[1]The plaintiff's motion to supplement the record was initially submitted to a motions panel of this court, which reserved decision and referred the motion to the panel that would hear the appeal.

outside the pleadings." *Villante v. Dep't of Corrections of City of New York*, 786 F.2d 516, 521 (2d Cir. 1986) (internal quotation marks omitted) (quoting *In re G. & A. Books, Inc.*, 770 F.2d 288, 295 (2d Cir. 1985)). In the case of a *pro se* party, however, "[n]otice is particularly important" because the *pro se* litigant "may be unaware of the consequences of his failure to offer evidence bearing on triable issues." *Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 767 (2d Cir. 1983). Accordingly, *pro se* parties must have "unequivocal" notice of the meaning and consequences of conversion to summary judgment. *Id.*

Thus, in *Beacon Enterprises*, we reversed the district court's grant of summary judgment, finding that the district court erred in failing to give prior notice to a *pro se* defendant before converting her motion to dismiss to a motion for summary judgment. *Id.* at 767-68; *see also Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620 (2d Cir. 1999) ("[T]he failure of a district court to apprise *pro se* litigants of the consequences of failing to respond to a motion for summary judgment is ordinarily grounds for reversal." (internal quotation marks omitted) (quoting *Ruotolo v. IRS*, 28 F.3d 6, 8 (2d Cir. 1994))).

In *McPherson v. Coombe*, 174 F.3d 276 (2d Cir. 1999), we elaborated on the requirements of notice to *pro se* litigants facing a motion for summary judgment. We ruled that, "absent a clear indication that the *pro se* litigant understands the nature and consequences of Rule 56 . . . he or she must be so informed by the movant in the notice of motion or, failing that, by the district court." *Id.* at 282. We therefore reversed a grant of summary judgment against a *pro se* plaintiff where the defendant's motion papers did not explain the nature of summary judgment

and there was no indication that the district court provided such notice. We found no other "clear indication" that the plaintiff understood the nature and consequences of summary judgment, even though the *pro se* plaintiff mentioned Rule 56 in his opposition papers and stated that he would provide supporting affidavits (but never did). *Id.* at 281 ("[W]here the proper notice has not been given, the mere fact that the *pro se* litigant has made some response to the motion for summary judgment is not dispositive where neither his response nor other parts of the record reveal that he understood the nature of the summary judgment process." (internal quotation marks omitted) (quoting *Vital*, 168 F.3d at 621)).

So far as appears in the record, neither the district court, nor the defendants, ever explained to Hernández the nature or consequences of summary judgment. There is also nothing in the record to suggest that Hernández independently understood the summary judgment process. The district court ruled that it was unnecessary to provide notice of the conversion of the motion to one for summary judgment because Hernández had already submitted "extensive affidavits with supporting documents addressing exhaustion." *Hernández*, 2006 WL 2109465, at *2.[2] The defendants argue that Hernández's submission of his initial affidavit in response to the

---

[2]The district court relied on two district court opinions for the principle that explaining summary judgment to a *pro se* party "is unnecessary in PLRA cases where both parties have submitted materials outside the pleadings and would not be surprised by conversion." *Hernández*, 2006 WL 2109465, at *2 (citing *Collins v. Goord*, 438 F. Supp. 2d 399, 412 (S.D.N.Y. 2006); *Curry v. Mazzuca*, No. 05 Civ. 1542 (NRB), 2006 WL 250487, at *4-5 (S.D.N.Y. Feb. 2, 2006)). These cases are inapposite because the defendants in each case provided notice pursuant to S.D.N.Y. Civil Rule 12.1 explaining that their motions to dismiss might be converted into motions for summary judgment for purposes of determining exhaustion,

10

district court's order to "submit a sworn affidavit explaining the administrative remedies that he sought and attaching all letters submitted in connection with those requests," together with Hernández's affidavit in response to their motion for judgment on the pleadings, indicate that Hernández understood the summary judgment process and had sufficient opportunity to oppose the motion. We disagree. Hernández's submission of these affidavits shows that he could respond to a district court order, but they do not show that he understood summary judgment in the way required by *McPherson* and *Vital*. There is no indication that Hernández understood that his affidavits would be his last chance to submit evidence related to exhaustion. Hernández submitted his affidavits in 2002, prior to this court's remand. Although our subsequent order of remand raised three new issues, the district court did not permit any additional briefing or submissions. Nor did the district court provide Hernández the opportunity to seek discovery from DOCS.

In sum, before the court converted the defendants' motion for judgment on the pleadings into a motion for summary judgment and granted that motion, extinguishing the *pro se* plaintiff's claim, the plaintiff was entitled to (i) an opportunity to take relevant discovery and to submit any evidence relevant to the issues raised by the motion, and (ii) absent a clear indication that he

---

and, further, explaining what the plaintiff had to do to oppose summary judgment. *See Collins*, 438 F. Supp. 2d at 412 n.14; *Curry*, 2006 WL 250487, at \*5; *see also Rivera v. Pataki*, No. 04 Civ. 1286 (MBM), 2005 WL 407710, at \*7 (S.D.N.Y. Feb. 7, 2005) (converting to summary judgment where defendant provided notice); *McCullough v. Burroughs*, No. 04 Civ. 3216 (FB) (LB), 2005 WL 3164248, at \*1 (E.D.N.Y. Nov. 29, 2005) (same). The defendants do not contend they gave any such explanations to Hernández in the instant case.

already possessed such understanding, an explanation of the consequence of a grant of summary judgment, as well as of what he could do to defeat the motion. We therefore vacate the judgment and remand for additional proceedings.[3]

## CONCLUSION

The judgment of the district court is VACATED, and the case is REMANDED for further proceedings consistent with this opinion.[4]

---

[3]Our ruling in no way suggests that we agree with Hernández's arguments regarding exhaustion or justification for failure to exhaust. We leave it to the district court to consider these questions in the first instance after Hernández has had the opportunity to take relevant discovery and submit relevant evidence and – if he returns to *pro se* status when proceedings resume in the district court – has received the explanations to which he is entitled.

[4]Hernández's motion to supplement the record on appeal is denied as moot.